United States District Court
For The Northern District Of Illinois

Dwight Richardson,
    Plaintiff,
    v.

David LaMonte-Special Agent ATF
Kyle Mingari - Chicago Police
John Hamilton - Chicago Police Sgt.
    Defendant(s)

CASE NO. 2017 C 8553
Judge: Virginia M. Kendall

**FILED**

MAY - 2 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## OPPOSITION MOTION TO DEFENDANTS MINGARI AND HAMILTON'S ANSWER, AFFIRMATIVE DEFENSE TO PLAINTIFF'S FOURTH AMENDED COMPLAINT, AND MOTION FOR JUDGMENT OF MATTERS OF LAW

Plaintiff, Dwight Richardson, Pro se Opposition to Defendant(s) Answer and affirmative defense to Plaintiffs' fourth amended Complaint, state as follow:

### Defendant(s) Answer To STATEMENT Of CLAIM

1. Defendant, Mingari acknowledged that Plaintiff was stopped on said date and approximate time

1.

2. Defendant, Mingari admits Plaintiff was placed inside an unmarked police car and driven some distance near Plaintiff's residence. Defendant, Hamilton also admitted that Plaintiff was driven some distance to his residence after being place in the police car.

Plaintiff states that a search incident to an arrest my only include the arrestee's person and the area with-in his immediate controll (Arizona v Grant 129 S.Ct 1710).

3. Defendants(s) Mingari and Hamilton both has turned a blind eye to the actions of Special Agent A.T.F. David La Monte.

4. Defendant, Special Agent A T F, David La Monte attemped to start Plaintiff's vehicle and ask, Mr. Daina Standback, a tenant who was exiting 22427 York Court in Richton, Park Il. if he had any jumper cables. Defendant, Mingari admits the part he played stating, "he attemped to start Plaintiff's vehicle several times," the vehicle never stayed started but would shut off. Defendant, Hamilton admits that he witnessed Defendant, Mingari trespass on Plaintiff's vehicle as well as condoned the action of Defendant, Mingari.

5. Defendant admits to his part of the unwarranted search of plaintiff vehicle, Defendant Mirgari. Defendant, Mirgari admits Plaintiff attaches as Exhibit A a search warrant that commands the search of Plaintiff and the premises ... and does not contain in its text a description of Plaintiff's Chevy Tahoe Truck or any of Plaintiff's vehicles. Defendant, Mingari also admits he recovered property from Plaintiff's vehicle

and inventoried it under number 13919787. See Exhibit A

Plaintiff states once arrested, detained and in custody, the search made at another place without a warrant is not incident to the arrest, Preston v. US 376 U.S. 364.

Defendant, Sgt. Hamilton admits to the acknowledgement of the search warrant, the search of Plaintiff, premises and other items as well as the fact that it does not contain an express or text description of a Chevy Tahoe Truck or any other vehicle of the Plaintiff's. Defendant, Hamilton also admits to knowing of Defendant's Mingari unwarranted search of Plaintiff vehicle, approved of it and condone his conduct.

Plaintiff states, Defendant, Sgt. Hamilton was able to see and observe the unwarranted search of Plaintiff vehicle but did not intervene. Officers may not ignore the duty imposed by his office and fail to stop other officers from liability for reasonably foreseeable consequence for the breach of their duty to inforce the law ... Byrd v. Brishke, 466 F. 2d 6.

6. Both Defendants, Sgt. Hamilton and Mingari reinterates that Plaintiff was handcuffed in the back seat of a parked police car with an officer present during the execution of the warrant and was some distance from his vehicle. Defendants further admits that Plaintiff was in no position where he could have destroyed evidence and the search was not in the interest of officers safety.

Plaintiff restate that under the search incedent to an

Arrest it is reasonable for an arresting officer to search the person arrested in order to remove weapons and search pretent concealment or destruction of evidence and search the area into which an arrestee might reach in order to grab a weapon or evidentiary items which is therefore ample justified for a search, Chimel 395 U.S 752; Hampton 616 NE.2d 641.

7. Plaintiff states that **no Nexus** established link between the search of Plaintiff's vehicle or indicia that Plaintiff's vehicle was used in any commition of any criminal activities, deliverys or transport. The Defendant's response was a perfunctory answer denying the allegations with-out a statement of probable cause. Searches conducted without warrants have been held unreasonable and unlawful not withstanding facts showing probable cause, Agnello v US 269 U.S 20, 33

8. Defendants, Mingari and Hamilton both admit that Plaintiff's vehicle was parked in the parking lot adjacent to the multiunit building in which Plaintiff reside and that Plaintiff did not provide consent to either of them to search his vehicle.

A search warrant authorizing a search of a certain premises generally includes any vehicle located with-in its curtilage if the object(s) of the search might be located therein, United States v Pugh 2003 U.S Dist LEXIS 8673; Curtilage is the area which extends the intimate activity associated with the sancity of a man's home and privacies of life and therefore has been considered part of the home itself for fourth Amendment purposes,

4.

United States v. Patterson, 278 F.3d 315; Curtilage helps to define where the police can search pursuant to a warrant; Mack v. City of Abilence, 2005 US Dist LEXIS 39411. parking lot space is not within apartment's curtilage; Search warrant for apartment did not authorize search of vehicle parked in apartment building parking lot, Commonwealth v. Velerio, 1997 Mass. Super LEXIS 476.

9. Both Defendant Mingari and Hamilton admits a second search warrant could be applied but deny the need. See United States v. Longie, 370 F.Supp 2d 941, Agent searched out-side of the curtilage of a house and exceed the scope of the warrant. the justification for the search was erroneous where the agent(s) could have easily secured the [auto] shed and obtained a warrant prior to the search of it. Defendants Mingari and Hamilton indicates that they lack knowledge to believe that Plaintiff's vehicle could not move but both admitted after several attemps Plaintiff vehicle would not stay started (start) in their answer on pg. 4 answer 4.

In California v. Carney, 412 US 465, 466 dicussing the automobile exception; Pennsylvania v. Labron, 518 US 938, 939-40, pursuant to the automobile exception to the Fourth Amendment's warrant requirement, "if a car readily mobile and probable cause exist to believe it contains contraband, police may search

a vehicle without a warrant. However, When a vehicle is not mobile and officer(s) know it is not mobile, the vehicle exception might not apply. Washburn, 449 F.3d 808, 814 (7th cir 2006)

Paragraphs 10, 11 and 12 not directed to Defendants Mingari and Hamilton.

13. Defendant(s) Hamilton breached his duty as a police officer and showed a deliberate indifference toward the rights of a citizen. Sgt Hamilton has a duty to serve and protect even those that are accused.

14. Defendants, Mingari and Hamilton both acknowledge that Sgt. Hamilton was the supervisor of the search team. They both deny the accuracy of this paragraph or completely set forth Chicago Police Department Special Order S04-19. Special Order S04-19 p.g 1, II "Policy" A. rank of sergent or above ... is search team supervisory and will: (1). Oversee all pre-execution planning and requirements. (2). be present and remain on the scene ...

Page 7, VIII Search Warrant Execution. A. Prior to execution ... supervisor will: (1) Conduct the planning session with his team. (2). Ensure members...are familiar with: a) the purpose and scope of the search; b) the location of the search; c). each member's identity and assigned duties; d). the function of equipment; e) know/potential hazards likely to affect the executiong of a search warrant.

Page 8. VIII C Before entering describe in the search warrant supervisor will Ensure that: ☆2. the premises to be searched are in fact those discribed in the search warrant. Page 9. VIII D. At the time of Actual search warrant execution: 1. the search team supervisor will: b). Personally coordinate the movements and activities of team members. (Special Order SO4-19 partly enclosed) Exhibit 4.B 15/16. Defendants Mingari and Sgt Hamilton both deny paragraph 15 and 16. Sgt. Hamilton action or inaction was a results of deliberate indifferance. He (Sgt. Hamilton) failed and/or refused to properly supervise the execution of the warrant, failed to protect the rights of the Plaintiff aswell as breach of his duty. As the supervisor, Defendant, Hamilton was to oversee preplanning; prior to the execution conduct a planning session and make sure members know the purpose and scope of the search, location as well as members duties; As the supervisor Defendant Hamilton was to ensure that: "the premises to be searched are in fact those discribed in the Search warrant" see Special Order SO4-19. Not Adhereing to the directive and policies set forth within Chicago Police Department, Special Order SO4-19 was wanton and reckless and resulted in the violation of Plaintiff 4th Amendment right Paragraph 17 and 18 were denied by the defendants and lacked knowledge of.

19. Both Defendant(s), Mingari and Hamilton indecated that they lack knowledge on information about officers involved in this action's prior conduct of 4th Amendment complaints. But Prior to Plaintiff unconstitutional complaint of an unwarranted vehicle search, Officer Mingari was alleged to search two vehicles without probable cause during the execution of a search warrant, complaint number logged at 1073225. (See Exhibit 11 ). Information that is known by Chicago Police Department.

## COUNT I
Dismissed by the Courts (ECF #60).

## COUNT II

The Defendants Mingari and Hamilton incorporate their answers to paragraphs 1 through 19 fully set out in Count II.

1.
The search of Plaintiff's vehicle violated Plaintiff Fourth Amendment of the U.S. Constitution and Article 1 Section 6 of the Illinois Constitution.
Defendants Mingari and Hamilton both denied this allegation. However, Defendant Mingari admitted in his answer to paragraph 5 that he searched Plaintiff vehcile and seized property from the vehcile and inventoried it under, number 13919787. Defendant, Mingari did not have

8.

probable cause to search Plaintiff vehicle, Plaintiff did not concent to the search of his vehicle nor did Defendant Mingari have a warrant text to search Plaintiff vehicle. The Fourth Amendment protect against unreasonable search and seizures as well as Article I section 6 of the Illinois Constitution.

2. The Defendants recklessly and with wanton disregard of the law and Plaintiffs' federally protected rights.

Defendants Mingari and Hamilton denied this allegation. Defendant, Mingari Recklessly broke the law and Defendant, Hamilton approved and condoned it. Chapter 720 I LCS 5/21-2 Criminal trespass to vehicles, state that: (a) A person commits criminal trespass to vehicles when he or she knowingly and without authority enters any part of or operates any vehicle... After Defendant Mingari violated this statutory law he proceeded to search the Plaintiff's vehicle which violated Plaintiffs' federal right to be free from unreasonable searches even from government officials

3. Plaintiff vehicle was disable at the time of the search, Defendants Mingari and Hamilton incist they lack knowledge due to the term, "disable". Disable. Ordinarily, to take away the ability of, to render incapable of proper and effective action, Blacks Law Dictionary, 6th Edition, 1990 pg. 462. The Defendants go on to say," Defendant Mingari was able to start Plaintiff's vehicle "several times" not indicating that

9.

he cut the car off but the car would stop running rendering it incapable of proper and effective action — disable.

4. There was no probable cause to search Plaintiff's vehicle. Both Defendants, Mingari and Hamilton deny this allegation but fail to indicate any valid cause for the invasion of Plaintiff's right.

5. The search was beyond the scope of the search and the warrant. The defendants both deny this allegation. The Search Warrant states: "I therefore command that you search: Richardson, Dwight IR# 760658, A.K.A. "RAY", DOB 06.13.1967, a male black, approx. 5'11" in height, approx 200 lbs, black hair short style, brown eyes, graying beard and dark skin complexion. And the premises: 22427 York Ct 4E, Richton Park, Cook County, Illinois (a multi-unit building)" and seize the following... No wear in the text of this warrant is plaintiff vehicle described. The search warrant describing the place to be search, And the person(s) or things to be seized with particularity anything other than that is beyond the scope of the warrant.

6 There was no nexus linking Plaintiff's vehicle to any criminal activities. The Defendant both deny this allegation but can show no malic behavior in connection with Plaintiffs' vehicle. The only thing connect Plaintiff and the vehicle is ownership which is no illegal or criminal.

7. Plaintiff was not in the vicinity of the vehicle where he could reach evidence to destroy or gain access to a weapon for an officer to be concerned for their safety.

Both Defendant, Mingari and Hamilton admitted to this allegation.

8. Plaintiff vehicle was not on the curtilage of the premises. Although Defendants Mingari and Hamilton indicates the term curtilage is unclear they do admit that Plaintiff's vehicle was parked in a parking lot adjacent to the multiunit building in which Plaintiff resided which is not the curtilage of the premises

9 This is a Fourth Amendment violation, there was no legal exceptions to the automobile search nor was there any exigency reason to search where a second warrant could have been applied for. The Defendants Minargi and Hamilton denied this allegation but indicated \admit a second warrant could be applied for but deny the need for such, see answer # 9 pg 7.

WHEREFORE, Plaintiff Richardson request a judgment against the defendants in an amount that will fully and fairly compensate him for his injuries and damages, for punitive damages in an amount sufficient to punish defendants and detor others from similar acts, in the interst as followed by law for fees, cost of this action and such relief as may be just in the circumstances and consistant with the purpose of the Fourth United States Constitutional Amendment and Article 1 section 6 of the Illinois Constitution.

11

## COUNT III
### Violation of Title 24 USC 1331

Defendants Mingari and Hamilton made no response to Count III because it is not directed against these defendants

Count IV, V, VI and VI were all dismissed
see ECF #60

## OPPOSITION TO AFFIRMATIVE DEFENSES

1. Defendants Mingari and Hamilton are government officials, namely Chicago Police officers. The defendants alternative argument is that they are immune from liability for damages because they were acting in good-faith discharge of their public office as Chicago Police Officers. The "good faith" immunity of public officers from constitutional tort liability is now misnomer; ever since Harlow v. Fitzgerld, 457 U.S. 800, it is forfeited not by showing that the officer was acting in bad faith but by showing that he was violating an established constitutional principle

2. Defendant(s) Mingari and Hamilton has a duty to enforce the laws and preserve the peace but breached their duties as Chicago Police Officers and with deliberate indifference, Recklessly and wantonly disregarded Plaintiff's right.

3. To determine whether Defendants are entitled to the defense of qualified immunity, it depends whether the contours of the constitutional right in question were sufficiently clear that a reasonable officer would understand that what he is doing violates that right. Mack v. City of Abilene, 461 F. 3d 547 at 556 (quoting Saucier, 533 U.S. at 202. In Mack, The Cadillac was not part of the Apartment's curtilage since it is in a public common area and not related to the premises. Thus, the warrant did not authorize a search of the vehicle.

Also Appellees (Defendants) lacked probable cause to search the Cadillac. Nothing the informant told Appellees (defendants) implied "criminal act" in relations to his Cadillac, but made reference to the Suburban Truck... Knott v Sullivan 418 F. 3d 561, 571 (concluding that officers could not rely on a warrant to search on vehicle when descriptors refer to another...

As in Mack id at 556-557, search of a car in an open parking lot without a search warrant, without probable cause, without a concern for officers safety and without consent violates clearly established law. A reasonable officer would not think the Constitution allows a random search of a vehicle where none of the above justifications apply. Just As the Appellees in Mack, The Defendants Mingari and Hamilton are not entitled to defense of qualified immunity for the unconstitutional search of Plaintiffs vehicle.

13

4. Defendants, Mingari and Hamilton are both liable for Plaintiff's 42 U.S.C. 1983 claim for their individual cause and/or participation in Plaintiff's constitutional deprivation. Defendant, Mingari personally violated Plaintiff's right when he searched Plaintiff's vehicle without a warrant authorizing the search of Plaintiff's vehicle, without concent, without probable cause, without a concern for officer's safety nor was there any exigency reasons to search the vehicle where a second warrant could have been appilied for. Defendants admits that a search and seize occured to Plaintiff's vehicle. Defendant, Mingari clearly violated an established law.

Defendant, Sgt. Hamilton, a supervisor may still be personally liable for acts of his subordinates if he approves of the conduct. A supervisor must know about the conduct, facilitate it, approve it, condone it, or turn a blind eye. See Chavez v. Illinois State Police 251 F.3d 612, 651 (7th cir 2001) They must act either knowingly or with deliberate, reckless indifference. Jones v City of Chicago, 856 F.2d 985, 992-93 (7th cir 1988).

The law recognizes that defendant need not participate directly in the deprivation for liability to follow under 1983, Sanville v. McCaughtry 266 F.3d 724, 740 (7th cir 2001).

Defendant, Hamilton admitted he was on the scene and saw Defendant, Mingari trespass and search Plaintiff's vehicle knowing the Search Warrant did not authorize such a search. As a Supervisor and an Officer Defendant, Hamilton had a duty as an officer to intervene and stop Defendant, Mingari, Byrd v. Brishke, 466 F.2d 6 (7th cir 1972). Instead, Defendant, Hamilton

14.

Approved it and condone it. In Hampton v. Hanrahan 600
F.2d 606, 626,-27 (7th cir 1979), The supervisor planned the
execution of a search and seizure warrant that resulted in a
civil rights claim, he file for the warrant, selected the search
team members, the weapons that would be used and the time
of the execution, along with other things Id at Hampton 612.
It would be reasonable to infer from the supervisor's position
that he approved the decision which may be sufficient to
show personal involvement, Backes v. Village of Peoria Heights,
Illinois 662 F 3d 866, 869-70 (7th cir 2001).
5. Defendants DEMAND of Jury to the facts pertinent to immunity
are in dispute — Judge or jury? see Mc Gaughey v. City of Chicago,
664 F. Supp. 1131, 1139 (N.D. Ill. 1987). The most recent and
only en banc decision on the question states that the Judge
should always decide the issue of immunity. See Rakovich v.
Wade, 850 F.2d 1180, 1201-02 (7th cir 1988).

WHEREFORE, for the above reasons Plaintiff prays for a
Judgement against the Defendant(s) and any such relief
that this court find fit.

# MOTION FOUR JUDGMENT OF MATTERS OF LAW

Now comes the Plaintiff, Dwight Richardson, pro se

# I. INTRODUCTION

The Defendants are government officials, namely Chicago Police Officers who were executing a search warrant on May, 19, 2017. The search warrant command the search of the Plaintiff and his residence. During the execution of the warrant a search of Plaintiff's vehicle was also executed beyond the scope of the warrant.

The supervisor, also a Defendant, who planned and filicitated the search know that the search warrant did not express the search of Plaintiff's vehicle or any other vehicle. Nevertheless, wittness, condoned and approved the search and trespass of Plaintiff's vehicle. Defendant breached his duty as an officer, not just a supervisor by not intervening and stopping a fellow officer from violating an established constitutional right.

Defendants both who caused and participated in the constitutional violation of plaintiff's fourth Amendment rights are liable and the Plaintiff is entitled to summary Judgment.

## II. Undisputed Material Facts

1. There was a search warrant to search Plaintiff and his residence/primises. There was no indication of a Chevy Tahoe within the text of the search warrant. see Search warrant attached as exhibit A.

2. Both the defendants Mingari and Hamilton admits that the command of the search warrant does not contain an express description of a Chevy Tahoe Truck. see Defendants Answer #4 pg 4.

3. After Defendants Attorney, Mark C. Haines reviewed all document and spoken to all officers involved in the execution of the search warrant revealed that Chicago Police officer Kyle Mingari was the officer involved in the search of Plaintiffs vehicle. see Mark C. Haines discovery notice Nov. 5, 2018. Attached as exhibit DD.

4. Defendant, Mingari trespass upon Plaintiffs vehicle when he attempted to start it. See Defendant answer #4 pg 4.

5. Defendant, Mingari admitted to the search of Plaintiffs vehicle, the seizer of property and the inventory of it. see Defendant's Answer #5 pg 4 and 5 and inventory slip, attached Exhibit CC.

6. Plaintiff did not consent to the search of his vehicle. see exhibit BB Plaintiffs affidavit and Defendant answer #8 pg 6.

7. Defendant, Hamilton witnessed Defendant Mingari trespass on Plaintiff vehicle when he tried to start it. see Defendants Answer #4 pg 4.

8. Defendant, Hamilton witness and condone the unconstitutional search of Plaintiff's vehicle. see Defendants Answer #5 pg 4 and 5.

9. Defendant Hamilton approved the search. see Defendant's signiture of evidence inventoried of the supplementary report, attached Exhibit CC1 and CC2.

10. Plaintiff was handcuffed with an officer present in the back seat of a police car and acknowledged by both Defendant, Mingari and Hamilton, see Defendants answer #6 pg 6

17

11. Defendants admits Plaintiff was in no position to destroy evidence and the search was not conducted in the interest of officers safety, see Defendant answer #7 pg 12 and answer #6 pg 5/6.

12. Defendant's Mingari and Hamilton admits another search warrant could have applied but decided not to, see Defendants answer #9 pg. 6 and 7.

13. Defendants Mingari and Hamilton admits that Plaintiff's vehicle was parked in the parking lot of the apartment building where plaintiff reside, see Defendant answer #8 pg 6 and #8 pg 12.

14. Defendants know Plaintiff's truck (vehicle) was disable when he tried to start it, see Defendants answer #4 pg 4 and #3 pg 11.

15. As supervisor, Defendant Hamilton was to ensure that officers conducting the search were aware of the purpose and scope of the search ... see, Special Order, SO4-19, pg 7, VIII A., 2.a. attached exhibit.4B

16 Defendants Mingari and Hamilton admits that Hamilton was the supervisor on the scene, see Defendants answer #4 pg.9

17. As supervisior, Defendant Hamilton had a duty to oversee all pre-execution planning requirements. see Special Order SO4-19, pg.1, II., A 1. see Special Order SO4-19 attached exhibit 4B

18. Defendant Hamilton had a duty to make sure the "premises search were those discribed in the warrant." see Special Order SO4-19 pg.8, VIII, C, 2. attached exhibit 4B

19. Defendant Hamilton duty was to personally coordinate the movements and activities of team members, see Special Order, SO4-19, pg 9, VIII D 1. b. attached exhibit 4B

20. Defendant Hamilton breached his duty to ensure each team member participating in the execution of the search warrant will execise caution with respect to the rights of those involved. see Special Order SO4-19, pg 9, VIII. D. 3 attached exhibit 4 B.

20. Defendants Are not new to searches a perform such discretionary functions at all time, see Defendant Answer # 1 pg 14

21. Defendant Mingari have previously been part of a complaint where he was Alleged to illegal search two vehicles during the execution of a search warrant, see Officer's complaint history log no. 1073225 attached 11.

## III. ARGUMENT

- Background

On the date of the search, the Defendants caused and participated in an unwarranted search of Plaintiff's vehicle. There was no warrant that particularly described the search of a Chevy Tahoe, see Defendants answer ## 5 pg 4 and 5; No probable cause to search; without plaintiff's consent, see Defendants Answer # 8 pg 6 and Plaintiff's Affidavit attached exhibit BB or exigency circumstances that would prevent Defendants from obtaining a warrant, see Defendant's answer # 9 pg 6 and 7.

# SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law, Nutrasweet Company et al. v. X-L Engineering Company, et. al. 227 F.3d 776, 785 (7th cir 2000). The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material which show the absence of a genuine issue of material fact. Celotex Corp v. Catrett, 477 U.S. 317, 325. Federal Rule of Civil Procedure 56 "mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which the party will bear burden of proof at trial". Celotex Corp., 477 U.S. at 322. Where the nomoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trail ... there can be no genuine issue of material fact; since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

- Defendants violated a federally protected right

To prevail over this claim of unreasonable search and seizer the Defendants must prove that: The officers acted within their discretionary authory and did not

violate clearly established statutory or constitutional rights of which a reasonable person would have known. Mendenhall v. Riser, 213 F.3d 226, 230 (5th cir 2000).

• Plaintiff has a right to be secure against unreasonable search and seizer

In the present matter, Plaintiff was detained incident to the execution of a search warrant that commanded the search and seizure of Plaintiff and the premises of 22427 York ct... The Plaintiff was handcuffed and driven some destent toward the vicinity of his residence.

During the execution of the search and seizure warrant, Defendant Mingari, went beyond the scope of the search warrant when he searched the Plaintiff vehicle that was parked in the parking lot. There was no contitutional justification for extending the search beyond that area of the warrant. No probable cause existed to search Plaintiffs vehicle. No restraint was imposed by the agent/officer in the search conducted without warrants have been held unconstitutional notwithstanding fact showing probable cause Agnello v. US, 269 U.S 20, 33; for the constitution requires that the impartial Judgment of a Judicial officer be interposed between the citizen and police Wong Sun v. U.S, 371 U.S. 471, 481-482. The mandate of the fourth Amendment requires adherence to judicial process U.S v Jeffers 342 US 48, 51, "Defendant searched Plaintiffs vehicle without restraint, probable cause or a warrant".

Probable cause to search a vehicle must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely a subjective good faith of the officer. General exploratory searches are unreasonable, unauthorized and invalid. Helmka, 86 Wn.2d at 93. Defendants Mingari and Hamilton did not show nor had probable cause to search Plaintiff's vehicle.

Under search incident to arrest it is resonable for an arresting officer to search the person arrested in order to remove any weapon and search to prevent concealment or destruction of evidence and the area which arrestee might reach in order to grab a weapon or evidentary item which is therefore justified for a search Chimel 395 U.S 752; Hampton 616 NE.2d 641. However, Plaintiff was detained and drove toward the site described in the warrant. Plaintiff's vehicle was searched after he was driven from one point to another. The search incident to an arrest may only include the arrestees person and area "within his immediate control see 725 ILCS 5/108-1(1). Arizona v. Gant 129 S.Ct.1710. Once arrested, detained and in custody the search made a another place without a warrant is not incident to the arrest. Preston v. United States, 376 US 364. The justification is absent where the search is remote in time and place from the arrest.

California v. Carney, 412 U.S 386, 390 there are exception to the warrant general rule of securing one before a search is undertaken called "automobile exception. See Maryland v. Dyson 527 U.S 465, 466. dicussing the automobile exception to the fourth amendment warrant requirement, "if a car is readily mobile and probable cause exist

to believe it contains contraband," police may search without a warrant Pennsylvania v. labron, 518 US 938, 939-40. Defendant, Mingari attemped to start Plaintiff vehicle prior to searching it. Defendant, Mingari attemped to start the vehicle not just once but "several" times realizing the vehicle was immobilized (disable). Nevertheless, Defendant Mingari executed an unwarranted search on Plaintiff's vehicle. WAshburn, 449 F.3d 808, 814 (7th cir 2006) When a vehicle is not mobile and officer(s) know it is not mobile, the vehicle exception might not apply. see United State v Hatley 15 F.3d 856, 858-59, The police may search a vehicle without a warrant first, if they have probable cause to believe that it contains evidence of a crime. This exception to the warrant requirement does not apply when there is no exigency circumstances at the time of the search, United States v. Robbins 1995 US App LEXIS 24355. The following factors should be weighed in determing wheathe the vehicle exception applies: its location ... whether the vehicle is mobile ... California v. Carney 471 US 386, 394 n.3 and can be moved outside of the Jurisdiction of the magistrate from whom the warrant must be sought United States v. Hamilton; 792 F.2d 837, 842.

Defendants Mingari and/or Hamilton could have applied for a second search warrant and secured Plaintiff vehicle but did not, see United States v. Longie, 370 F. Supp. 2d 941 on agent search that exceed the scope of the warrant, the justification for the search was erroneous where the agent(s) could have easily secured the shed and obtained a warrant prior to the search of it.

The Police must whenever practicable, obtain advance Judicial Approval of search and seizures through a warrant procedure. The scope of the search must be strictly tied to and justified by the circumstances which rendered its intintion permissible. Chimel v. California 395 US 752. It is a cardinal principle that searchs conducted outside the judical process, without prior approval by a Judge or magistrate, are per se unreasonable under the fourth Amendment subject only to a specifically established and well delineated exceptions, Katz v. United States 384 US 347, 357.

A search warrant authorizing a search of a certain premises generally includes any vehicles located with-in its curtilage if the object of the search might be located therein. United States v Pugh 2003 U.S Dist LEXIS 8673 Curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and privacies of life and therefore has been part of a home itself, for fourth amendment purposes United States v. Patterson, 278 F.3d 315; Curtilage helps to define where the police can search pursuant to a warrant Mack v. City of Abilene, 461 F.3d 547 Parking lot space is not within apartment's curtilage; Search warrant for apartment did not authorize search of vehicle parked in the apartment building parking lot Commonwealth v. Valerio 1997 Mass. Super. LEXIS 476, 6 Mass.L.Rep. 599; The common area parking lot on which [the defendants] automobile was parked was not within the curtilage of his mobile home US v. Stanley 597 F.2d 866, 870 (4th cir 1979)

Plaintiff vehicle was parked in the common area parking lot of his apartment complex see also, United States v. Soliz 129 F.3d

24

499, 503 (9th cir 1997); Commonwealth v. McCarthy 705 NE.2d 1110, 1114; State v. Coburn 518 P.2d 747, 757. Defendant, Mingari act was reckless and wanton indifference toward the rights of the Plaintiff

Defendant, Sgt. Hamilton the supervisor on the scene who facilitated the execution of the search warrant wittness Defendant Mingari, trespass and search Plaintiff's vehicle. Sgt Hamilton knew that the search warrant did not command the search of Plaintiff's vehicle but still condoned it and approved of it.

As a supervisor, Sgt. Hamilton may be personally liable because he approved of the conduct. see Chavez v Illinois State Police 251 F.3d 612, 651 (7th cir 2001). Defendant, Hamilton failed to prevent Defendant Mingari from a recurrence of such misconduct, Schnell v City of Chicago, 407 F.2d 1084, 1086 (7th cir 1969).

Defendant Hamilton had a duty to stop Defendant Mingari and any other officer when he notice trans-gression towards an established right see. Byrd v. Brishke, 466 F 2d 6 (7th cir 1972); Defendant, Sgt. Hamilton's failure to act deprived my right to be free from an unreasonable search. Defendant failure to prevent others from violating Plaintiff's civil rights rises to a level of reckless or callous indifferance

Riascos, 803 F.2d at 274.

In Hampton v Hanrahan 600 F.2d 606, 626-27 (7th cir 1979). The Supervisor planned the execution of a search and seizure warrant, selected the team, the weapons and the time of the execution, along with other things Id at Hampton 612. It would be reasonable to infer from supervisor's position that he approved the dicision which be sufficient to show personal involvement, Backes v. Village of Peoria Heights, Illinois 662 F.3d 866, 869-70 (7th cir 2001); Duckworth v. Franzer, 780 F.2d 645, 651 (7th cir 1985).

Defendant. Sgt. Hamilton was the supervisor, planned the execution, selected the team, the time of the execution, as well as other things. He is personally involved. Defendant Hamilton failed to supervise allowing Defendant Mingari to search beyond the scope of the warrant and not intervening; This failure allow Defendant Mingari to violate an established constitutional law; and Defendant. Sgt. Hamilton actions or inaction directly caused the deprivation of Plaintiff's rights and is liable under section 1983.

Because there are no genuine issues of material fact in dispute, Plaintiff Dwight Richardson is entitled to summary Judgment.

## IV. CONCLUSION

26

Because Defendants violated a federally established right, without probable cause, without Plaintiff's consent or an exigency circumstance. In light of these circumstances no reasonable officer would not think the constitution allows a random search of a vehicle where no legal justifications apply. Plaintiff's cause of action for unreasonable search of his vehicle, The fourth Amendment of the constitution apply as a matter of and this Court should grant Plaintiff, Dwight Richardson's Motion for Summary Judgment.

Respectfully Submitted
By: Dwight Richardson
Dwight Richardson

Exhibit A

(3-81) CCMC-1-220

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

The People of the State of Illinois to all peace officers of the state

# SEARCH WARRANT

On this day, ▇▇▇▇▇▇▇▇, Chicago Police Department, ▇▇▇▇▇▇▇▇▇▇▇ subscribed and sworn to a complaint for search warrant before me. Upon examination of the complaint, I find that it states facts sufficient to show probable cause.

## I therefore command that you search:

Richardson, Dwight IR#760658, A.K.A. "RAY", DOB ▇▇▇67, a male black, approx. 5'11" in height, approx. 200 lbs., black hair short style, brown eyes, graying beard and a dark skin complexion.

## and the premises:

22427 York Ct 4E, Richton Park, Cook County, Illinois (a multi-unit building)

## and seize the following instruments, articles and things:

Heroin to wit a controlled substance and any documents or items showing residency, any paraphernalia used in the weighing, cutting or mixing of illegal drugs. Any money, ▇▇▇▇▇▇▇▇ and any records detailing illegal drug transactions..

## which have been used in the commission of, or which constitute evidence of the offense of:

Possession of a Controlled Substance
720 ILCS 570/ 402

I further command that a return of anything so seized shall be made without necessary delay before me or before:

Judge _____    or before any court of competent jurisdiction.

_Kenneth G Wadas_  1700

**JUDGE**                        Judge's No.

Date and time of issuance: _18 May 2017 @ 3:30 pm._

# AFFIDAVIT

I Dwight Richardson state that the following statements to be true. On May 19, 2017 I was walking when I was stopped by Chicago Police, cuffed and detained in pursuant to a search warrant. I was placed in a police car and driven to my residence complex. Once parked, an officer grabbed my keys to prevent destruction of property and proceded to execute the warrant of the premises.

During the execution of the warrant I **NOTICED** an officer in an A.T.F Jacket trying to start my vehicle After realizing that it would not start retrieved a jump start box to try and start it (A.T.F Agent known as David LaMonte). There was an officer in a mask assisting him but the vehicle still did not start. A tenent that left the building (22427 York ct, Mr. Dana Stanback) was asked if he had any Jumper cables? The tenent proceded to his car and left. Nevertheless, My vehicle was searched by LaMonte and the masked officer (Know as Kyle Mingari) with out probable cause or my consent to search my vehicle.

The search was beyond the scope of the search warrant that commaned the Search of Dwight Richardson and the Premises of 22427... There was no vehicle particularly described in the text of the warrant (Exhibit A).

Under penalties provided by law pursuant to Section 1-109 of the Ill. Code of Civil Procedure, the undersigned certifies these Statements true.

Dwight Richardson

Dwight Richardson
4/22/19

OFFICIAL SEAL
L PICKENS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 03/17/20



Chicago Police Department  **Special Order S04-19**

**SEARCH WARRANTS**

| ISSUE DATE: | 03 September 2015 | EFFECTIVE DATE: | 03 September 2015 |
|---|---|---|---|
| RESCINDS: | 02 June 2007 Version | | |
| INDEX CATEGORY: | Preliminary Investigations | | |

## I. PURPOSE

This directive:

A. outlines procedures for preparing Complaints for Search Warrants (CCMC-1-219) and Search Warrants (CCMC-1-220).

B. establishes the procedures for obtaining, executing, returning, and retaining Complaints for Search Warrants and Search Warrants.

C. prescribes a process for the review of Complaints for Search Warrants and Search Warrants by the designated unit supervisor the rank of lieutenant or above before these documents are submitted to an assistant state's attorney.

## II. POLICY

A. A sworn member of the **rank of sergeant or above** will perform the functions of the search team supervisor and will:



1. oversee all pre-execution planning requirements.

2. be present and remain on the scene during the time of execution.

3. oversee all post-execution reporting requirements.

B. A sworn member assigned to the search team and designated by the search team supervisor will perform the functions of the evidence officer for every search warrant execution.

C. Uniform Requirements

1. For each search warrant execution, at least one participating member will be attired in the prescribed seasonal field uniform.

2. For the purposes of public and individual officer safety, all civilian dress members of the Chicago Police Department engaged in the execution of a search warrant will make themselves identifiable by use of specialized personal garments (i.e., Specialized Cap and Warrant Team Vest), in accordance with the provisions of this directive.

> NOTE: Descriptions of and authorizations for specialized personal garments are contained in the Department directive entitled "**Departmental Specialized Personal Garments**."

3. In unusual circumstances, the search team supervisor may authorize an exception to uniform requirements, but must be prepared to justify such an exception (e.g., approach path is carefully guarded, necessitating covert entry onto the premises; search team members must remain inconspicuous at the location delaying actual search warrant execution until the arrival of a particular offender).

4. Department members assigned to the Office of the Superintendent, *the Bureau of Detectives, and the Bureau of Organized Crime* may be exempt from the uniform requirements with prior approval from the appropriate *exempt* Department member.

**D.** At the time of actual search warrant execution:

    **1.** the search team supervisor will:

        **a.** ensure the Department members executing the search warrant adhere to the Knock and Announce Rule and 725 ILCS 5/108-8 and, when applicable, announce their presence and provide the residents a reasonable opportunity to allow entry.

        **b.** personally coordinate the movements and activities of team members.

        **c.** ensure that any searches of persons present at the location the search warrant is being executed are conducted in accordance with the provisions of the Department directive entitled "**Processing Persons Under Department Control.**"

    **2.** a member of the search team will promptly present a copy of the Search Warrant to the person named in the warrant or, that persons absence, the person in charge of the premises. If no one is present at the site of the search, a copy of the Search Warrant will be left at the place from which articles are seized. If no articles are seized, a copy of the Search Warrant will be left in a conspicuous location on the premises.

    **3.** each member participating in the execution of a search warrant will exercise caution with respect to the rights of those involved. If use of force is required, use only the minimum amount necessary, making every effort to leave the premises in the same condition as originally found.

    **4.** if evidence of a clandestine laboratory exists, the search team supervisor will ensure the procedures outlined in Department directive entitled "**Processing Narcotics Cases**" are followed.

**E.** Upon securing the premises and determining the situation is under control:

    **1.** the search team supervisor will ensure notifications are made to the following with the particulars of the search:

        **a.** The OEMC dispatcher.

        **b.** the *station supervisor* of the district of occurrence.

        **c.** the *designated unit supervisor / station supervisor* of the search team.

        **d.** the police agency having immediate jurisdiction that a search warrant has been executed, if outside the City of Chicago.

    **2.** the notified *designated unit supervisor / station supervisor* will include the particulars of the search warrant on their *Watch Incident Log (CPD-21.916).*

    **3.** *all evidence collection will be the responsibility of the evidence officer.*

        **a.** *While on the scene of the warrant, only the evidence officer will handle recovered currency during a search.*

        **b.** Bulk amounts of United States currency subject to inventory will be sealed at the scene in a Currency Inventory Bag (CPD-41.720) and processed consistent with the Department directive entitled "**Inventorying Money.**"

            **(1)** For the purposes of this directive, a bulk amount of United States currency is defined as an amount that is not readily determined on the scene.

            **(2)** Currency inventory bags will not be used for money suspected of having evidentiary value (e.g., commingled "1505" funds, proceeds of a robbery).

    **4.** the canine team will be utilized before the search team conducts the search, as appropriate.

    **5.** the designated member will:

        **a.** ensure the correct date and time stamp is added to all digital images.

D.    ensure the date and time of the judge's approval has been recorded by the court on both original documents.

E.    print the name of the approving judge and the approving attorney in the lower-right margin on both of the originals and prepare one copy of the Complaint for Search Warrant and two copies of the Search Warrant.

## VIII. SEARCH WARRANT EXECUTION

Prior to the execution of a search warrant, the search team supervisor will:

1. conduct a planning session with the search team members assigned to participate in the execution of the warrant.

2. ensure that participating members are thoroughly familiar with:

    a.    the purpose and scope of the search;

    b.    the location of the search;

    c.    each member's identity and assigned duties;

    d.    the function and operation of the equipment to be used;

    e.    known/potential hazards likely to affect the execution of the search warrant.

3. determine if exceptions to the uniform or equipment provisions of this directive are going to be requested. The search team supervisor must request **prior** approval from the *designated unit supervisor.*

4. consult with a SWAT team supervisor if:

    a.    the offender has a violent criminal history;

    b.    the offender has a history of violence against the police;

    c.    the offender is known to keep firearms readily available;

    d.    a large number of offenders are present;

    e.    the location is fortified;

    f.    guard dogs or other violent dogs are present;

    g.    a "no knock" search warrant has been issued pursuant to 725 ILCS 5/108-8; or

    h.    there are any other circumstances, as determined by the search team supervisor, that indicate a consultation is appropriate.

        **NOTE:**    A SWAT team supervisor can be contacted at all times via the 24-hour SWAT desk, *BELL 6-7180 or PAX 4344.*

5. ensure that a Search Warrant Data record is created in the CLEAR system, including the completion of the:

    a.    Personnel Assignments section.

    b.    justification for any exception to the uniform requirements as outlined in this directive. The exception and its justification will be noted in the Equipment Exception field.

6. review the Search Warrant Data-Part I record, ensuring that all Items for Consideration have been considered.

7. after a satisfactory review, submit the Search Warrant Data-Part I record electronically to the *designated unit supervisor the rank of lieutenant or above* for approval.

*Exhibit 4 B*

8.    request the presence of a canine team when the focus of the warrant is narcotics and/or explosives.

> **NOTE:**    Search team supervisors not utilizing a canine team for these situations will justify in the appropriate case report why a canine team was not used (e.g, canine team not available, search involved a safety deposit box).

9.    designate a search-team member that has received Department training in the use of digital cameras and uploading images to photograph images consistent with Item VIII-E-5 of this directive.

> **NOTE:**    Any unit that does not have access to a Department-issued digital camera or a Department member trained in its use will request the services of an evidence technician.

B.    The *designated unit supervisor the rank of lieutenant or above* reviewing the Search Warrant Data form prior to execution of a search warrant will:

1.    interview the search team supervisor and:

   a.    determine whether the Items for Consideration have been reviewed.

   b.    verify that all civilian dress search team members have the appropriate specialized personal garments (i.e., Specialized Cap, Warrant Team Vest).

   c.    ensure the search warrant information is submitted to Chicago HIDTA for event deconfliction consistent with the Department directive entitled "**Chicago HIDTA Deconfliction Submissions.**"

   d.    indicate approval of the proposed plan electronically in the CLEAR system.

2.    ensure Warrant Team Vests are made available to all civilian dress members of the search team from the unit supply, if necessary.

C.    Before entering the location described in the Search Warrant, the search team supervisor will ensure that:

1.    **each participating member is wearing body armor;**

2.    **the premises to be searched are in fact those described in the Search Warrant;**

3.    the Search Warrant is being executed within 96 hours of issuance;

4.    each participating civilian dress member required to wear the cap and the vest is wearing the items;

5.    at least one participating member is attired in the prescribed seasonal field uniform;

6.    at least one member of the search team has a personal radio operating on the zone frequency of the location to be searched;

7.    coordination of communications is established. Members of the search team may use authorized walkie-talkie radios or use specialized frequencies of personal radios intended to be operated in walkie-talkie mode; and

8.    notification of the impending search warrant execution is made to:

   a.    The Office of Emergency Management and Communications (OEMC) dispatcher;

   b.    the *station supervisor* of the district of occurrence; and

   c.    the *designated unit supervisor / station supervisor* of the search team.

Exhibit 11

Officer Mingari

| LOG_NO | CURRENT_CATEGORY | CURRENT_STATUS | ALLEGATION_DESCRIPTION |
|---|---|---|---|
| 1075963 | MISSING MONEY OR PROPERTY | CLOSED/NO CONVERSION | THE REPORTING PARTY ALLEGES THAT THE ACCUSED OFFICERS EXECUTED A WARRANT AT HIS RESIDENCE WITHOUT JUSTIFICATION. HE STATES THAT THEY WERE IN SEARCH OF A BLACK MALE SUBJECT WITH THE NAME "CHARLES". THE REPORTING PARTY FURTHER ALLEGES THAT THE ACCUSED OFFICERS DAMAGED THE INTERIOR OF THE RESIDENCE AND TOOK HIS XFINITY HOME VIDEO SECURITY SYSTEM AND FAILED TO INVENTORY SAME. REFERENCE: 15SW6477 |
| 1073225 | DAMAGE PROPERTY | CLOSED/NO CONVERSION | The reporting party alleged that the accused officer destroyed the victim's personal property and residence during a search warrant and searched two vehicles without probable cause. |
| 1075501 | MISCELLANEOUS | CLOSED/NO CONVERSION | |

Exhibit CC

PROPERTY INVENTORY - NO.
**CHICAGO POLICE DEPARTMENT**
CPD-34,523 (REV. 10/09)

INV NO **13919787**     PKG NO **4565555**

UNIT **189**

INVENTORY NO. **13919787**     WARRANT NO. **17SW6158**

RE-INVENTORY OF:

DATE RECOVERED
**19-MAY-2017**

RD **JA270158**

ITEM ID    QUANTITY

**DESCRIPTION OF PROPERTY**

S470523    1    NARCOTIC / DRUG : STAPLED ZIPLOC BAG CONT. A WHITE POWDER SUBSTANCE SUSPECT HEROIN

MY SIGNATURE HEREON ACKNOWLEDGES RECEIVING ALL PROPERTY DESCRIBED IN THIS INVENTORY

RECIPIENTS SIGNATURE
X

ADDRESS - STREET

CITY          STATE          ZIP

COMMENTS: EVENT#03114, RAID#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, R#170359

**S INVENTORY AMT**

DATE RECEIVED

OFFICER'S SIGNATURE - STAR - UNIT
X

**EVIDENCE & RECOVERED PROPERTY SECTION USE ONLY**

WATCH COMDR 'S APPROVAL SIGNATURE
(EXEMPT RANK REQUIRED FOR FIREARMS)
X

Court Date  **14-JUN-2017**

Court Branch  **44-2**

CURRENCY.

COURT ORDER - DISPOSAL INSTRUCTIONS

IUCR:    **2024**    **NARCOTICS POSS: HEROIN(WHITE)**    CHARGE TYPE: **FELONY**

STATE CHARGES:  **720 ILCS 570.0/402-A-1-A**    INCHOATE:  **OFFENSE AS CITED**

RECOVERED/SEIZED FROM - NAME  **RICHARDSON, DWIGHT**    AT  **22427 S YORK CT**    **BEAT OF RECOVERY**
DECEASED    ☒ ARRESTED    **RICHTON PARK, IL**

OWNER'S NAME    **RICHARDSON, DWIGHT**    ADDRESS  **22427 S YORK CT Apt 4E**    TELEPHONE NO.    JUDGE          CT.BR.
                                         **RICHTON PARK, IL**

FOUND BY - NAME    **MINGARI, KYLE**  Star: **4733**    ADDRESS    TELEPHONE NO.    OFFICER'S SIGNATURE - STAR    UNIT
☒ CHECK IF                                                                          X
C.P.D.                                    SEE COPY 2 FOR DETAILS TO - CODES

☐ HOLD FOR INVESTIGATION    INVESTIGATING OFFICER -    STAR NO.    UNIT    1st OFFICER'S NAME    STAR NO.    E. & R.P.S USE ONLY
AND/OR EVIDENCE    **FLEMING, PETER**    **6063**    **189**    **BETANCOURT, HERBERT**    **16976**
(IF NOT NEEDED FOR INVESTIGATION/EVIDENCE, LEAVE BLANK)

☐ PROPERTY AVAILABLE FOR RETURN TO    SIGNATURE    UNIT
OWNER    **Electronic Approval**    **189**

☐ TO BE DISPOSED OF BY CUSTODIAN (NOT TO BE RETURNED)    2nd OFFICER'S NAME    STAR NO.
(THIS APPLIES IF PROPERTY IS NOT EVIDENCE, NOT RETURNABLE AND/OR OWNER IS UNKNOWN)    **FLEMING, PETER**    **6063**

INITIAL DESTINATION OF PROPERTY:    SIGNATURE    UNIT
**FORENSIC SERVICES DIVISION**    **Electronic Approval**    **189**

VIA  ☒ POLICE MAIL    ☐ RECOVERING UNIT PERSONNEL    APPROVING DESK SERGEANT    STAR NO    DATE    TIME
☐ E & RPS PICKUP    ☐ EVID./LAB TECHNICIAN    **HAMILTON, JOHN**    **2329**    **19-MAY-2017**    **14:14**

Created by: PCU0211
DISCLAIMER: Inventory created by user other than the 1st, 2nd, or Investigating officers

**COPY 3 - COURT COPY - ATTACH TO COURT PAPERS**
FCRL 000004

Printed by: PC0N529  19-MAY-2017 14:15

6158. R/O obtained a search warrant for the residence of 22427 York Ct 4E and Richardson, Dwight IR#760658. R/Os arrived at the residence prior to execution to confirm Richardson was present. Surveillance of the residence revealed Richardson when he exited the front door.

R/Os in a covert capacity followed Richardson as he walked a juvenile to school. Richardson dropped off the juvenile and began to walk back to his residence. Before he re entered the warrant location R/Os approached Richardson to place him into custody for delivery of a controlled substance. Richardson had sold UCO Fleming suspected heroin on 16 May 17 under RD, JA266746 and again on 17 May 17 under RD,JA268094. The purchased heroin on both days was sent to the Illinois State Crime lab for testing purpose.

R/Os at this time presented Richardson a copy of the warrant. Richardson gave R/Os his keys that he had on his possession to the residence to not damage the property. R/Os used the keys to open both doors of the residence at this time executing the search warrant. There was no other person present and R/Os began a systematic search of 22427 York Ct 4E.

R/Os recovered 20 grams of suspected heroin, 5 grams of suspected cannabis, $3236 dollars of United States currency, proof of residence, narcotics paraphernalia, cell phones used in narcotic transactions, and $60 of 1505 funds used in a UC control buy. Richardson, Dwight was transported to Homan Sq to process and charge accordingly. Ticket issued for cannabis recovered under number CL705589.

This case is cleared closed by arrest pending prosecution.

| PREPARER - SIGN OR INITIAL | | APPROVAL - SIGN OR INITIAL |
|---|---|---|
| PF 6063/ | FCRL 000003 | JH 2329/ |

*Exhibit CC1*

Identify and describe all property or possible evidence recovered at the end of the Narrative in column form. Show exactly where found, when found, who found it and it's description (include Property Inventory numbers). If property taken was scribed for Operation Identification, indicate I.D. number at the end of the Narrative. Offender's approximate description, if possible, should include name if know, nickname, sex, race code, age, height, weight, color eyes and hair, complexion, scars, marks, etc. If suspect is arrested, give name, sex, race code, age, C.B. or I.R. number, if known, and state "In Custody." All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

## Narcotic's Division Supplementary Report
### CHICAGO POLICE-FOR USE BY B.O.C. PERSONNEL ONLY

**JA-270158**

| Offense Classification / Last Report | | | IUCR Code | Offense Reclassification / DNA | | | | Revised IUCR |
|---|---|---|---|---|---|---|---|---|
| Possession of controlled substance | | | 2024 | | | | | |

| Address of Occurrence | Type of Location | | Location Code | Date of Occurrence | Time of Occurrence | | Beat of Occ | Beat Assigned |
|---|---|---|---|---|---|---|---|---|
| 22427 York Ct 4E | Residence | | 259 | 19-May-17 | 0802 | | 3100 | 6242g |

| Victims | Victim's Name | Relation | Method Code | Method Assigned | Unit | Safe Method | If Residence/Where |
|---|---|---|---|---|---|---|---|
| 1 | State of Il/Fleming 6063 | 24 | | Field | 189 | | |

| Offenders | Offender's Name | Relation | Num Arrested | Arrest Unit | Adults | Juveniles | Fire | Gang Related |
|---|---|---|---|---|---|---|---|---|
| 1 | Richardson, Dwight | 24 | 1 | 189 | 1 | 0 | No | Yes |

### Update Information  *See Narrative For Updated Information

| Victim Verified | ☐ | Offender Verified | ☐ | Property Verified | ☐ | Circumstances Verified | ☐ |
|---|---|---|---|---|---|---|---|
| Victim Updated | ☐ | Offender Updated | ☐ | Property Updated | ☐ | Circumstances Updated | ☐ |

| Status | | | | | | | | How Cleared | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0-Prog | 1-Sus | 2-Unf | 3-C/C | 4-C/O | 5-C/C/X | 6-C/O/X | 7-C/N/C | 1 - Arrest | 2- Juv-Ct | 3 - Ref Pros | 4 - Comm Adj | 5 - Other |
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ |

**EVENT NUMBER:** 03114   **INCIDENT NUMBER:** 170359   **RAID NUMBER:** 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   **R.D. NUMBER:** JA-270158

This is a Narcotic's Division Investigation Officer's Report by Beat Assigned: 6242g

OPERATION/MISSION #: 170359

OFFENDER(S): **Richardson, Dwight IR#760658**, M/1/DOB ▬▬▬, approx 5'11", approx 200lbs, wearing a black jacket and blue jeans, Residence used 22427 York CT, Richton Park, IL

GANG AFFILIATION(S): GD

CHARGE(S): PCS,

WITHIN 1000 FEET OF: Richton Sq School 22700 Richton Sq School.

COURT BRANCH DATE AND COURT OFFICER: 44-2, 14 Jun 17, Fleming 6063

SEARCH WARRANT NUMBER: 17sw 6158

ASA APPROVING SEARCH WARRANT: Wachnik, E

JUDGE APPROVING SEARCH WARRANT: Wadas 1700

PERSON(S) PRESENT NOT ARRESTED: None

POLICE PERSONNEL ON SCENE: Sgt Hamiton 2329,
Officer(s) Fleming 6063, Betancourt 16976, Mingari 4733, Roman

| 90. EXTRA COPIES REQ'D | 91. DATE SUBMITTED   TIME<br>19 May 17 | 92. SUPERVISOR APPROVAL  STAR<br>Hamilton            2329 |
|---|---|---|
| 93. REPORTING OFFICER - PRINT  STAR<br>Fleming            6063 | 94. REPORTING OFFICER  STAR | SIGNATURE |
| SIGNATURE | SIGNATURE | DATE APPROVED          TIME |

*JA-270158*

FCRL 000001          SIGNATURES IN BLUE INK

Page 1 of 3

Exhibit CC2

EVENT NUMBER : 03114   INCIDENT NUMBER : 170359   RAID NUMBER : 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   R.D. NUMBER : JA-270158

This is a Narcotic's Division Investigation Officer's Report by Beat Assigned: 6242g

12008, Marsh 12915, Haidari 4663. Uniform Officer from Richton Park Beglau 124.

EVIDENCE INVENTORIED:

3-Knotted bags each containing 14 bags of suspected heroin. Found inside the bottom of a fake can. Recovered by Marsh in the kitchen area. INV#13919762.

Zip lock bag containing suspected heroin Found in the livingroom area by Mingari. INV#13919777.

Zip lock bag recovered inside Richardson vehicle by Mingari. INV#13919787.

Gray container containing cannabis. Found by Fleming in Richardson bedroom. INV#13919798.

$2026 United States currency found in Richardson room by Fleming. INV#13919814.

$1210 United States currency found on Richardson person by Mingari. INV#13919804.

Proof of residence found by Betancourt. INV#13919824.

Scale and narcotic paraphernalia found by Mingari. INV#13919826.

Keys to the residence found by Fleming on Richardson. INV#13919828.

2-Cell phones used in narcotic transaction. Found by Fleming INV#13919830.

1-concealment can of Tite seal. INV#13919833.

$60 of Chicago Police 1505 funds used on a controlled buy. Found by Fleming in bundle of United States currency inside Richardson bedroom. INV#13919853.

TOTAL WEIGHT & STREET VALUE:     20 grams ESV$3000
                                 5gr Cannabis ESV$80

EVIDENCE OFFICER:                Mingari 4773

VEHICLE IMPOUNDED/TOWED:         Not at this time.

PROOF OF RESIDENCE:              Yes

NOTIFICATIONS:                   Ad Desk, 24 hour desk, 004 District.

OFFENDERS VEHICLE:               Gold color Chevy Tahoe with temp tag 5161931.

SUMMARY OF INVESTIGATION:

This is an on view incident by Narcotic personnel from 6242/D2 made during the execution of search 17 SW

| PREPARER - SIGN OR INITIAL | FCRL 000002 ROVAL - SIGN OR INITIAL |
|---|---|
| PF 6063/ | JH 2329/ |



DEPARTMENT OF LAW

CITY OF CHICAGO

November 5, 2018

**VIA FIRST-CLASS MAIL**

Dwight Richardson
#2017-0901196
Cook County Jail
P.O. Box 089002
Chicago, IL 60608

*Re: Richardson v. Johnson et al., 17 C 8553*

Dear Mr. Richardson:

Pursuant to Judge Kendall's order dated 10/22/18, enclosed please find the discoverable materials that explain the role of any Chicago police officers involved in the alleged search of your vehicle. These documents are bates stamped FCRL 00001-00004. I have reviewed all of the documents in the possession of the City of Chicago's Department of Law and have spoken to all of the officers involved in the execution of the search warrant of your premises that occurred on May 19, 2017. Based upon that review and those conversations, Chicago Police Officer Kyle Mingari (Star # 4733) was the only officer involved in the alleged search of your vehicle. Please note that Officer Mingari is the officer listed as having recovered the zip lock bag from your vehicle in the Narcotic's Division Supplementary Report dated May 19, 2017, as well as the officer associated with the recovery of the zip lock bag as indicated in the Chicago Police Department Property Inventory Report, Inventory # 3919787.

If you have questions or concerns, you may contact me at 312-744-3982.

Sincerely,

Mark C. Haines
Assistant Corporation Counsel
30 North LaSalle Street, Suite 900
Chicago, IL 60602
(312) 744-3982

Encl.
Cc: Thomas P. Walsh
United States Attorney's Office (NDIL - Chicago)
219 South Dearborn Street
Chicago, IL 60604
(312) 353-5300

Mr. Dwight Richardson
#20170901196, C.C.D.O.C
P.O. Box 089002
Chicago, Il. 60608

FRANK

 


05/02/2019-19

Prisoner Correspondance

Office of Clerk of The United States Court

United States Court House

219 S. Dearborn

Chicago, Ill. 60604

LEGAL
M
I
L

LEGAL
M
I
L

7.34



U.S. FLAG

20 First-Class™ Forever® Stamps

UNITED STATES