NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|   |   |   |
|---|---|---|
| DWIGHT RICHARDSON, | ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | No. 17 C 8553 |
| ATF Special Agent DAVID LAMONTE, Chicago Police Officer KYLE MINGARI, and Chicago Police Sergeant JOHN HAMILTON, | ) ) ) ) ) ) | Judge Virginia M. Kendall |
| *Defendants*. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dwight Richardson has sued Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent David LaMonte, Chicago Police Officer Kyle Mingari and Chicago Police Sergeant John Hamilton for violations of 42 U.S.C. § 1983 for a Fourth Amendment Violation arising out of an inventory search of Richardson's vehicle and seizure of unnamed property. Defendants dispute that the search of the vehicle was improper under the Fourth Amendment because they had probable cause, and, in the alternative, have qualified immunity. (Dkts. 98, 101). Hamilton also argues that he cannot be liable in his supervisory role because the underlying inventory search of Richardson's vehicle was lawful. (Dkt. 101). All parties have moved for summary judgment. (Dkts. 97, 100, 108). Because there are no issues of material fact in dispute, Defendants' Motions for Summary Judgment are granted.

1

## BACKGROUND

The below facts come from Richardson, Agent LaMonte, Officer Mingari and Sergeant Hamilton's Rule 56.1 Statements of Facts. (Dkts. 99, 102, 107). Richardson failed to respond to the facts in Defendants' Statements of Facts and therefore the Court deems the facts admitted. *See* Local Rule 56.1(b)(3)(C); *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 382 n. 2 (7th Cir. 2008) (The Seventh Circuit repeatedly has "held that a district court has broad discretion to require strict compliance with Local Rule 56.1.")

Prior to May 16, 2017, Chicago Police Officer Fleming obtained information that an individual known as "Ray" was selling heroin out of or near his mother's house, was given a specific address, and was told that "Ray" would be driving a gold Chevrolet Tahoe. (Dkt. 102 at ¶ 5). Officer Fleming set up surveillance and observed a vehicle and subject matching the description of "Ray," and then notified narcotics officers and began surveillance. (*Id.* at ¶ 6). Officer Fleming then arranged to make a controlled heroin purchase from "Ray" on May 16, 2017, notifying narcotics team of the prearranged purpose. (*Id.* at ¶ 7). Chicago Police Officer Roman and Officer Mingari positioned themselves so they could conduct surveillance on the narcotics purchase. (*Id.* at ¶ 9). At the prearranged time, Officer Fleming and a confidential informant drove to the predetermined location, where officers observed a gold Chevrolet Tahoe parked on the side of the street and the individual known as "Ray" in the driver's seat. (*Id.* at ¶ 10). "Ray" exited the gold Chevrolet Tahoe, walked to the passenger side window of Officer Fleming's vehicle, and engaged in a hand-to-

hand narcotics transaction. (*Id.* at ¶¶ 11-12). Officer Fleming gave a signal over the radio that he made a positive heroin purchase from "Ray," providing a physical description of him. (*Id.* at ¶ 13). Officer Fleming viewed a photo array at the police station and identified Richardson as "Ray," the person who sold him heroin earlier that day. (*Id.* at ¶ 15). Officer Fleming then arranged to make another controlled purchase of heroin from Richardson on May 17, 2017 in a Subway parking lot, where surveillance was arranged. (*Id.* at ¶¶ 16-17). Officers observed Richardson exit the gold Chevrolet Tahoe, approach Officer Fleming and a confidential informant, and sell heroin to Officer Fleming. (*Id.* at ¶¶ 19-20). Richardson then got back into his gold Chevrolet Tahoe and left the area, while Officer Fleming gave a signal over the radio to the narcotics team indicating he made a positive heroin purchase from Richardson. (*Id.* at ¶¶ 20-21). On May 18, 2017, Officer Fleming asked a confidential informant to make a narcotics purchase from Richardson at his residence, which the confidential agreed to do, ultimately purchasing heroin from Richardson at his residence. (*Id.* at ¶ 23). Based on the two controlled purchases of heroin from Richardson on May 16 and 17, 2017, and the purchase made by the confidential informant on May 18, 2017, Officer Fleming swore to a complaint for a search warrant authorizing the search of Richardson and his residence. (*Id.* at ¶ 24). The complaint for search warrant did not include authorization to search Richardson's gold Chevrolet Tahoe because Defendants did not intend to search that vehicle for narcotics pursuant to the search warrants, instead intending to seize the gold Chevrolet Tahoe during the execution of the search warrant because under the

3

Illinois Controlled Substances Act, there was probable cause to believe that the vehicle was subject to forfeiture on the grounds that it was used by Richardson to transport and to facilitate the possession, transportation and sale of heroin to Officer Fleming on May 16 and May 17. (*Id.* at ¶¶ 25-26). The search warrant was executed on May 19, 2017, and the officers present were Sergeant Hamilton and Officers Mingari, Fleming, Bentacourt, Roman, Marsh, Haidari, and Special Agent LaMonte. (*Id.* at ¶ 28). Richardson was arrested for selling heroin on May 19, 2017 as he was walking near his residence. (Dkt. 99 at ¶¶ 6-7; Dkt. 102 at ¶ 29). Richardson was taken into custody, was placed in the back of the police vehicle, and was presented with a copy of the search warrant. (Dkt. 102 at ¶ 30; Dkt. 107 at ¶ 5).

Officers from the narcotics team executed the search warrant of Richardson's residence, recovering suspect narcotics and paraphernalia. (*Id.* at ¶ 31). Agent LaMonte participated in the search of the apartment. (Dkt. 99 at ¶ 8). Officer Mingari and Sergeant Hamilton told Agent LaMonte that they had recently observed Richardson selling heroin out of his truck, a tan Chevrolet Tahoe that was parked near Richardson's residence, on more than one occasion and they had probable cause to seize the truck. (*Id.* at ¶ 9-10). Based on the information Agent LaMonte received and based on his prior law enforcement experience, Agent LaMonte concluded that probable cause existed to seize the truck for the purpose of asset forfeiture and to conduct an inventory search and an officer-safety search in the course of the seizure. (*Id.* at ¶ 11). He also believed that a warrantless seizure was reasonable under the circumstances. (*Id.* at ¶ 12).

4

The officers then entered the truck and conducted an inventory search following standard procedures. (Dkt. 99 at ¶ 13; Dkt. 102 at ¶ 32-33). Officer Mingari followed his standard procedure for conducting an inventory search, which involved conducting an initial inventory search of the vehicle at the point of seizure to ensure there are no weapons or contraband in the vehicle for police or public safety and to ensure a proper chain of custody over any recovered weapons or contraband. (Dkt. 102 at ¶ 33). As part of the standard procedure, the vehicle is then towed to a secure police facility at which time an additional search is conducted to inventory any personal items of value belonging to the owner of the vehicle. (*Id.*). The officers then tried to start the truck, but could not do so, deciding to leave it where it was found without removing it due to the expense of towing relative to the vehicle's value. (Dkt. 99 at ¶ 14; Dkt. 102 ¶ 38-39; Dkt. 107 ¶ 8). Officer Mingari and Sergeant Hamilton both recall that Agent LaMonte did not personally enter the truck, although Agent LaMonte authored a report a few days after the incident suggesting he participated in at least part of the search of the truck. (Dkt. 99 at ¶¶ 15-16; Dkt. 102 ¶ 35). Sergeant Hamilton did not enter the truck and his role was to supervise the execution of the search warrant and the inventory search and the attempted seizure of Richardson's vehicle. (Dkt. 102 ¶¶ 35-36). Agent LaMonte did not seize anything from the truck, but Officer Mingari recovered a bag containing suspect heroin, for which Richardson was not charged. (Dkt. 99 at ¶¶ 17-18; Dkt. 102 ¶ 34; Dkt. 107 at ¶ 9).

5

Richardson was charged with two counts of delivering fewer than 15 grams of heroin in violation of 720 ILCS 570.0/401-C-1, and one count of possessing between 15 and 100 grams of heroin in violation of 720 ILCS 750.0/402-A-1-A. (Dkt. 99 at ¶ 19; Dkt. 102 ¶¶ 43-45). Richardson reached a plea agreement with the Cook County State's Attorney's office and pleaded guilty to possession. (Dkt. 99 at ¶ 20; Dkt. 102 at ¶ 46).

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g., Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether a genuine issue of fact exists, the Court must take the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson*, 477 U.S. at 255; *see also Zander v. Orlich*, 907 F.3d 956, 959 (7th Cir. 2018).

## DISCUSSION

Special Agent LaMonte, Sergeant Hamilton and Officer Mingari have all moved for summary judgment, stating that there is no issue of material fact over whether the search of Richardson's vehicle was proper under the Fourth Amendment and whether they are entitled to Qualified Immunity. (Dkt. 98, 101). Richardson, in

turn, argues that there is no issue of material fact over the impropriety of the search of his vehicle and purported issues in the way the white powder recovered from Richardson's vehicle was inventoried under the Fourth Amendment. (Dkt. 108). Because Defendants have shown there is no issue of material fact as to whether the search was proper under the Fourth Amendment and as to whether they are entitled to Qualified Immunity, Defendants' Motions for Summary Judgment are granted. (Dkts. 97, 100).

## I. Probable Cause Existed and Seizure was Reasonable Under the Illinois Drug Asset Forfeiture Procedure Act

Defendants state that probable cause existed for agents to search the car. (Dkt. 98 at 3; Dkt. 101 at 3-4). Richardson does not dispute that probable cause existed. *See* Local Rule 56.1(b)(3)(C). The undisputed facts show that CPD officers observed Richardson selling heroin out of his car in advance of his arrest. (Dkt. 99 ¶ 5; Dkt. 102 ¶¶ 10-13, 17-21). The undisputed facts also show that police believed they had probable cause to search his vehicle and did not believe they needed a warrant. (Dkt. 99 ¶ 11, 12; Dkt. 102 ¶ 26, 32).

Under Illinois law, personal property may be seized "if there is probable cause to believe that the property is subject to forfeiture" and is seized "under circumstances in which a warrantless seizure or arrest would be reasonable." 725 ILCS 150/3.1(c)(4); *Scott v. Glumac*, 3 F.3d 163, 164 (7th Cir. 1993) ("In Illinois, a police officer may seize a vehicle believed to have been used in the course of committing or attempting to commit a Controlled Substances Act violation. Such a vehicle is subject to forfeiture . . ."); *Bell v. City of Chicago*, 118 F. Supp 3d 1016, 1019 (N.D. Ill. 2015)

7

("...[A] warrantless vehicle seizure and search does not violate the Fourth Amendment if the officer has probable cause to believe that the vehicle is being used to conduct illegal activity.")[1]

The undisputed facts show that the Defendants believed that probable cause existed to seize the truck for forfeiture purposes. (Dkt. 99 ¶ 11, 12; Dkt. 102 ¶ 26, 32). "When deciding whether a vehicle is forfeitable, the primary focus is whether it facilitated the commission or attempted commission of the drug offense." *Scott*, 3 F.3d at 164. A vehicle "facilitates a drug offense sufficiently to justify forfeiture" when the person carrying the drugs uses the vehicle, among other reasons, to "move about at will." *Id.* at 165; *see also Grover v. Boyd*, 182 F.3d 921 (7th Cir. 1999) (seizure of car objectively reasonable when police believed that plaintiff's car was used to transport drugs based on undisputed facts existing at the time that his car was seized). A car is forfeitable when the car is "an integral, constituent part of the offense arising from the sale transaction." *Id.* Here, it is undisputed that Richardson used his vehicle twice to transport drugs to a pre-designated location where he then sold them to Officer Fleming. (Dkt. 99 ¶ 5; Dkt. 102 ¶¶ 10-13, 17-21). There was thus sufficient probable cause to seize the truck for forfeiture purposes under Illinois law.

Illinois law also requires that the seizure be reasonable. 725 ILCS 150/3.1(c)(4). Richardson argues that Defendants only have probable cause from a subjective posture, but that they do not show the property was seized under

---

[1] The Court notes that Officer Mingari and Sergeant Hamilton cite to Illinois Controlled Substances Act ("the Act") (720 ILCS 570/100 et seq. (West 2016), however the test they implemented is the same as that under 725 ILCS 150/3. (Dkt. 101)

8

circumstances in which a warrantless seizure or arrest would be reasonable. (Dkt. 115 at 4). This is incorrect. Because there was substantial probable cause arising from police observation and videotaped evidence of Richardson selling heroin from his vehicle, the seizure was inherently reasonable. (Dkt. 99 at ¶¶ 9-10; Dkt. 102 at ¶¶9-22); *United States v. Pace*, 898 F.2d 1218, 1241 (7th Cir. 1990) (The "police may seize a car without a warrant pursuant to a forfeiture statute if they have probable cause to believe that the car is subject to forfeiture"); *Smith v. City of Chicago*, 524 F.3d 834, 835 (7th Cir. 2008) (vehicle "may be seized by a law enforcement officer without a warrant where there is probable cause to believe it was involved in a drug crime and is, accordingly, subject to forfeiture"). Richardson queries why Mingari and Hamilton claim to have probable cause to believe Richardson's vehicle was subject to forfeiture under the Illinois Controlled Substances Act if the vehicle was not included in the complaint for Search Warrant. (Dkt. 116 at 6). Such a question is answered by the undisputed statements made by Hamilton and Mingari that they intended to seize the vehicle during the execution of the search warrant under the Illinois forfeiture statute. (Dkt. 102 ¶ 6).

Richardson does not have any rebuttal to the undisputed fact that probable cause existed and that the subsequent inventory was reasonable. Instead, he argues several different theoriesmin his reply briefs[2] Aside from the fact that these arguments were presented in his reply briefs for the first time and are not developed,

---

[2] The Court notes that Richardson did not respond to any of LaMonte's Motion for Summary Judgment and instead filed a two-page response that refers to his response to Hamilton and Mingari, despite the parties putting forth different arguments. (Dkt. 116).

9

the arguments also lack merit. Richardson, for example, argues that because Defendants did not impound the car, they did not seize it pursuant to 725 ILCS 150/3.1. (Dkt. 115 at 9). While Richardson tries to distinguish cases along these lines, there is no precedent that a car must be impounded in order for it to be inventoried. As stated in *Pace*, "when police lawfully seize a vehicle, they have a right to inventory the car's contents, as long as they conduct that inventory pursuant to standard police procedures." 898 F.2d at 1243 (7th Cir. 1990) (citing *Colorado v. Bertine*, 479 U.S. 367, 371-72 and 374 n. 6 (1987).

The undisputed facts show that Officer Mingari "followed his standard procedure for conducting an inventory search, which involved conducting an initial inventory search of the vehicle at the point of seizure to insure there are no weapons or contraband in the vehicle for police and public safety and to ensure a proper chain of custody over any recovered weapons or contraband." (Dkt. 102 ¶ 33). The undisputed facts also show that according to standard procedure, the car is generally towed to a secure police facility, but it was not towed in this instance after the car failed to start because the cost was not economically viable. (*Id.* ¶¶ 38-39). As discussed above, the authorities here had ample probable cause to seize the vehicle pursuant to 725 ILCS 150/3.1 and lawfully inventory it. The fact that they did not eventually take it to an impound lot due to cost considerations does not factor into the analysis.

Unable to show that the warrantless inventory search of the vehicle was improper, Richardson makes a series of arguments that do not bear on the issue.

10

Next, he argues that the Defendants did not properly inventory the zip lock bag containing a white powdery substance. (Dkt. 115 at 4). Of course, this has nothing to do with the probable cause to search. Whether the seizure and subsequent inventory of the vehicle was reasonable under the Fourth Amendment does not depend upon the methods used to store the items discovered during the inventory.[3] Richardson also argues that exigent circumstances do not apply. (Dkt. 115 at 11-12). Yet, none of the Defendants has argued that exigent circumstances apply here making his argument frivolous. Richardson has failed to show any disputed facts that the seizure of the car and the subsequent inventory was unreasonable under the Fourth Amendment. Special Agent LaMonte, Sergeant Hamilton and Officer Mingari are entitled to summary judgment.

---

[3] Unsurprisingly, Richardson does not cite any case law for the proposition that the subsequent inventory must be proper in order for a warrantless search and seizure to be reasonable under the Fourth Amendment and the Court cannot find support for this either.

11

**II.     Defendants Have Shown They Are Entitled to Qualified Immunity**

All defendants have argued that they are entitled to Qualified Immunity. A public official is entitled to qualified immunity from suit unless he violated a clearly established constitutional right. *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Qualified immunity analysis is a two-step inquiry where the Court determines: (1) whether the facts alleged or shown by the plaintiff establish a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Court may choose to look at the second prong first if it simplifies the analysis. *Id.*

To show that a right is clearly established, the plaintiff must demonstrate that existing caselaw at the time of the events in question "placed the statutory or constitutional question beyond debate." *Al-Kidd*, 563 U.S. at 741. A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). In other words, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). However, a plaintiff may overcome an officer's qualified immunity by showing that the conduct in question is "so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have

12

thought he was acting lawfully." *Abbott* v. Sangamon County, 705 F.3d 706, 723–24 (7th Cir. 2013) (citations omitted).

Here, the undisputed facts show that the Defendants believed they were acting pursuant to the law when they seized and inventoried Richardson's car. (Dkt. 99 ¶ 11, 12; Dkt. 102 ¶ 25-26, 32). At the time the vehicle was inventoried, they did not know it would not start, nor that it was not cost-effective to impound the vehicle for forfeiture. (Dkt. 99 at ¶ 14; Dkt. 102 ¶ 38-39). Accordingly, they were acting as reasonable officers would and followed standard procedure. Richardson does not argue that Defendants behaved egregiously, nor does he show that they acted in an unreasonable matter. Rather than respond to Defendants' Qualified Immunity arguments, Richardson states broadly that "Qualified Immunity is not a license to violate Plaintiff's Constitutional rights," before putting forth a baseless theory that Defendants' are using the forfeiture statute as pretext for the search as they never took possession of the vehicle after the inventory search. While the Court agrees that Qualified Immunity does not give the Defendants leave to violate any Constitutional right, Plaintiff once again ignores the undisputed facts, which show that Defendants believed they were acting reasonably, that they did not believe they needed to seek a warrant because of Illinois law, and that the reason they did not impound the car was for cost considerations. Because there is no issue of material fact as to whether Defendants are entitled to Qualified Immunity, Defendants are entitled to summary judgment on this ground.

13

## III. Richardson Has Not Shown He Is Entitled to Summary Judgment

Richardson filed his own Motion for Summary Judgment. (Dkt. 108). However, his Motion serves more as a supplemental response to Defendants' motions considering he continues to re-hash arguments made in his reply briefs which the Court has already responded to above. Richardson posits his own theories but none of them relevant or based in fact. One of Richardson's arguments is that the material taken during the inventory search was never properly inventoried and "was simply added to the heroin Defendant Mingari recovered from the search of Plaintiff's apartment." (Dkt. 108 at 5). There is no factual basis for this claim and such a statement is inappropriate at the summary judgment stage where the Court "construes the facts and draw all reasonable inferences in favor of the nonmoving party," not, as Richardson suggests here, draws an unsupported inference in his favor. *Ferraro v. Hewlett-Packard Co.*, 721 F.3d 842, 847 (7th Cir. 2013).

As it stands, none of the additional facts that Richardson sets forth in his Rule 56.1 statement are material nor have any bearing on the analysis above. The only new facts Richardson adds pertain to defects in the inventory process, which, as discussed above, are irrelevant since Richardson's complaint makes clear he was bringing a suit claiming the seizure and initial inventory violated his Fourth Amendment rights. All material facts mentioned above granting summary judgment to Defendants are undisputed. *Bloodworth v. Vill. of Greendale*, 475 Fed. Appx. 92, 95 (7th Cir. 2012) ("Cross-motions must be evaluated together, and the court may not

14

grant summary judgment for either side unless the admissible evidence as a whole - from both motions - establishes that no material facts are in dispute"). Richardson's Motion for Summary Judgment does not change the analysis.

## CONCLUSION

Defendants statements of material facts, which were not disputed by Richardson, show they did not violate Richardson's Fourth Amendment rights when seizing his car and conducting an inventory search. They also demonstrate they are entitled to Qualified Immunity. Richardson's Motion for Summary Judgment does not show there are any issues of material of fact on these issues. Special Agent LaMonte, Sergeant Hamilton and Officer Mingari's Motions for Summary Judgment [97, 100] are therefore granted. Richardson's Motion for Summary Judgment is denied. [Dkt. 108].

_____
Virginia M. Kendall
United States District Judge

Date: June 15, 2020